# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ANTHONY AZUKAS, | : | |
| Plaintiff, | : | CASE NO. 3:22-cv-403 (MPS) |
| | : | |
| v. | : | |
| | : | |
| SCOTT SEMPLE, et al., | : | |
| Defendants. | : | APRIL 14, 2022 |
| | : | |

_____

## ORDER

Plaintiff Anthony Azukas, incarcerated at Cheshire Correctional Institution in Cheshire, Connecticut, filed this case under 42 U.S.C. § 1983. The plaintiff names six defendants, former Commissioner Scott Semple, former Warden Scott Erfe, Unit Manager Danby, Dr. Ricardo Ruiz, APRN Kristen Donohue-Gonzalez, and RN Shadane M. Harris. The plaintiff contends that the defendants violated his Eighth Amendment rights. The plaintiff seeks damages from the defendants in their individual capacities and declaratory relief in their official capacities.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis*.

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

Although courts must interpret a pro se complaint liberally, the complaint will be dismissed unless it includes sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

I.    Allegations

The plaintiff was incarcerated at Cheshire Correctional Institution ("Cheshire") at all times relevant to this action. ECF No. 1 ¶ 1. On March 19, 2019, the plaintiff slipped on the tile floor outside the downstairs showers in South Block 5. *Id.* ¶ 5. He struck the back left side of his head on the floor. *Id.* ¶ 6. He did not suffer a laceration and did not lose consciousness. *Id.* There were no rubber shower mats on the floor outside the showers. *Id.* ¶ 7.

As the plaintiff did not feel injured, he returned to his cell, changed his clothes, and went about his day. *Id.* ¶ 8. A few hours later, as the plaintiff tried to get up to go to the dining hall, his legs were numb. *Id.* ¶ 10. He tried to reach out with his right arm, but his arm would not work. *Id.* The plaintiff also experienced difficulty breathing, feeling as if he were being choked, and a headache. *Id.* Then, suddenly, all the symptoms stopped, except for the headache. *Id.*

2

When defendant Nurse Harris entered the housing unit to distribute evening medication, the plaintiff told her about his fall and delayed symptoms. *Id.* ¶ 12. Nurse Harris said there was no doctor on duty, the medical unit was short-staffed, and she was busy distributing medication. *Id.* ¶ 15. She told the plaintiff to submit a sick call request and he would be seen in the medical unit the following day. *Id.* The plaintiff completed a request noting that "he may have damaged something vital" and asked to see the doctor. *Id.* ¶ 16. When he tried to give the request to Nurse Harris, she refused to take it saying that policy required that all requests had to be put in the "sick call" box. *Id.* ¶ 17. The plaintiff then put the request in the box. *Id.*

The following day, March 20, 2019, the plaintiff returned to his cell from "college" with a severe headache. *Id.* ¶ 24. He tried to speak to a nurse in the hallway but was told to submit a request. *Id.* The plaintiff was not called to the medical unit that day. *Id.* ¶ 25. The plaintiff assumes that Nurse Harris logged his two sick call requests. *Id.* ¶ 26.

From March 21, 2019 through April 2, 2019, the plaintiff's physical and mental capacities deteriorated. *Id.* ¶ 27. At the end of the time, other inmates had to help him move around the housing unit. *Id.* The plaintiff tried, unsuccessfully, to get medical assistance from the nurses distributing morning medication. *Id.* ¶ 28. Custody and medical staff asked the plaintiff if he had submitted written requests and, when he said he had, told him to be patient. *Id.* ¶ 29.

On April 2, 2019, custody officers Ferrerra and Steiner investigated his claims and determined that the plaintiff needed medical assistance. *Id.* ¶ 30. Officer Steiner called the medical unit and reported that the plaintiff was not eating, was sleeping excessively, and was vomiting periodically. *Id.* ¶ 31. As a result of Officer Steiner's persistence, the plaintiff was

3

seen in the medical unit that evening.  *Id.*  ¶ 32.  Nurse Harris, the only person there, agreed to examine the plaintiff because there was no doctor on duty.  *Id.*

The plaintiff told Nurse Harris about his fall and head injury and described his symptoms.  *Id.*  ¶ 33.  The plaintiff alleges his symptoms, sleeping day and night, vomiting, and inability to remember the day or month, suggested a concussion.  *Id.*  Nurse Harris noted constant neck pain/headache, losing track of time, an odd demeanor, and a flat affect.  *Id.*  ¶ 34.  Nurse Harris referred the plaintiff to mental health to assess the flat affect, gave him Motrin for his pain, and sent him back to his cell.  *Id.*  ¶ 36.  The medical note attached to the Complaint indicates that Nurse Harris would put the plaintiff on a list to follow-up with the APRN or doctor but it does not indicate that she referred him to a physician or ensured that he saw one on the following day.  ECF No. 1-1 at 6.

The following day, April 3, 2019, Social Worker Lisa Simo-Kinzer evaluated the plaintiff.  ECF No. 1 ¶ 38.  She realized that the plaintiff's issues were medical, not psychiatric.  *Id.*  Social Worker Simo-Kinzer spoke with Office Steiner and discussed her conclusions with Dr. Cartwright, the head of the mental health unit.  *Id.*  ¶¶ 39-40.  Dr. Cartwright took the plaintiff to the medical unit to discuss his issues with a doctor or APRN.  *Id.*  ¶ 40.

APRN Donohue-Gonzalez was the only person on duty in the medical unit that day.  *Id.* ¶ 41.  After Dr. Cartwright and the plaintiff informed APRN Donohue-Gonzalez of the entire situation, APRN Donohue-Gonzalez performed a full physical and neurological examination.  *Id.* ¶¶ 42-3.  Her primary diagnosis was concussion with a bad headache, and her secondary diagnosis was "loss of time."  *Id.*  ¶ 43.  APRN Donohue-Gonzalez stated that the plaintiff needed a CT scan and said she would request one.  *Id.*  The plaintiff was again returned to his

4

cell with Motrin.  *Id.*  ¶ 44.

On April 4, 2019, at 2:30 p.m., about a half hour before the shift change when the doctor would leave, Dr. Cartwright came to the plaintiff's housing unit and asked whether he had been seen by medical staff.  *Id.*  ¶ 52.  When the plaintiff said no, she took him to the medical unit.  *Id.* Dr. Cartwright relayed all the information to Dr. Ruiz and left the plaintiff in Dr. Ruiz's care.  *Id.* ¶ 53.  Dr. Ruiz performed another neurological test.  *Id.*  ¶ 54.  As with the previous test, the plaintiff failed half the tasks.  *Id.*  Dr. Ruiz sent the plaintiff on an emergency trip to the UConn Emergency Department for a CT scan.  *Id.*

The plaintiff underwent the CT scan on April 4, 2019 at 7:00 p.m.  *Id.*  ¶ 55.  About thirty minutes later an emergency code was called for the plaintiff.  *Id.*  ¶ 56.  The plaintiff learned that the CT scan showed an acute/subacute large left subdural hematoma with a left uncal herniation and slight displacement of the brain stem.  *Id.*  ¶ 57.  The plaintiff was admitted to the ICU for neurological monitoring and emergency surgery the following morning.  *Id.*  ¶ 58.  The surgeon explained that, although the surgery usually required a hole the size of a dime, they would have to cut a hole the size of the plaintiff's fist because so much blood had pooled in his brain.  *Id.*  ¶ 59.

On April 5, 2019, the plaintiff underwent a craniotomy.  *Id.*  ¶ 60.  After remaining in the hospital for nine days, he returned to the infirmary at MacDougall Correctional Institution.  *Id.* The plaintiff had sixty-five staples in his head and now has a horseshoe shaped and sized scar on the left side of his head.  *Id.*  ¶ 61.  The plaintiff remained in the infirmary for twelve days and then was transferred to the infirmary unit at Osborn Correctional Institution where he remained until he returned to general population on August 1, 2019.  *Id.*  ¶ 62.

Because his head is held together with titanium plates and screws, the plaintiff must be careful and protective of his head. *Id.* ¶ 91. The large incision caused nerve damage to the left side of the plaintiff's head, face, and neck. *Id.* ¶ 92. He has chronic neck and left shoulder pain, and permanent weakness on the left side of his body. *Id.* ¶ 93. The plaintiff now walks with a cane. *Id.* The plaintiff has permanent hypersensitivity to light in both eyes and hypersensitivity to certain sounds in his left ear. *Id.* ¶ 94. He wears special tinted glasses and keeps his left ear plugged. *Id.*

The plaintiff cannot read, write, or concentrate as he once did. *Id.* ¶ 63. On August 1, 2019, the plaintiff asked to return to Cheshire as he had been taking college courses there and wanted to resume his classes. *Id.* ¶ 95. The plaintiff discovered that he has lost about 60% of his memory. *Id.* ¶ 96. After taking one course as a test, he realized that he had serious problems and became depressed. *Id.* The problems with memory, reading, and writing along with emotional instability caused the plaintiff to drop out of college. *Id.* ¶ 98.

The plaintiff's family noticed a significant personality change. *Id.* ¶ 99. He was referred to the psychiatrist for testing and was found to have significant impairment in delayed memory and attention. *Id.* ¶¶ 99-100. Since his injury, the plaintiff has had problems with every cellmate because of his physical and mental issues. *Id.* ¶ 104. He has been approved for a single cell. *Id.*

II.   Analysis

The plaintiff alleges the defendants violated his Eighth Amendment rights in the following ways: (1) defendant Semple failed to implement a policy that ensured adequate coverage for medical emergencies and adequate medical staffing; (2) defendant Erfe failed to

6

ensure adequate medical coverage to respond effectively to emergencies; (3) defendants Erfe and

Danby failed to provide mats outside the showers; (4) defendant Ruiz failed to ensure sufficient

medical coverage, failed to provide a sick call system that ensured timely treatment and handled

emergencies, and failed to adequately supervise defendants Harris and Donohue-Gonzalez; (5)

defendants Donohue-Gonzalez and Harris failed to have the plaintiff transported to the hospital

thereby preventing proper diagnosis and treatment of his condition; and (6) defendant Harris

failed to perform neurological tests the first two times the plaintiff's issues came to her attention

and failed to prioritize the sick call requests to ensure that the plaintiff was treated.

   A.  Supervisory Liability

   Defendants Semple, Erfe, and Ruiz are supervisory officials.   To recover damages under

section 1983, the plaintiff must demonstrate each defendant's "personal involvement in the

alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir.

2013).  Personal involvement of a government official is not established "by reason of [the

official's] supervision of others who committed the violation." *Tangreti v. Bachmann*, 983 F.3d

609, 619 (2d Cir. 2020).

   In *Tangreti*, the Second Circuit clarified the standard to be applied in a claim for

supervisory liability.  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court rejected a

theory of supervisory liability that permitted a supervisor to be "held liable based on a lesser

showing of culpability than the constitutional violation requires." *Tangreti*, 983 F.3d at 617

(citing *Iqbal*, 556 U.S. at 677).  In *Tangreti*, the Second Circuit held that "after *Iqbal*, there is no

special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each

Government-official defendant, through the official's own individual actions, has violated the

7

Constitution.'" *Id*. a 618 (quoting *Iqbal*, 556 U.S. at 676).

      Prior to *Tangreti* and *Iqbal*, the Second Circuit established five factors that could be used to show the personal involvement of a supervisory official in a constitutional violation: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring*." Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

      Following *Tangreti*, the second, fourth, and fifth *Colon* factors are no longer valid ways to establish the personal involvement of a supervisory official. *See Stone #1 v. Annucci*, No. 20-CV-1326(RA), 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021) (noting district courts' rejection of *Colon* factors after *Tangreti*, but noting that *Tangreti* did not involve the third, or policymaking, factor). However, a supervisory official "can still be held liable for his role in creating a policy by which violations of the Eighth Amendment occurred, but only if he can be shown to have acted with the necessary *mens rea* of deliberate indifference—that is, only if the pleadings or record evidence permit the inference that [he] had subjective knowledge of the risk [of substantial harm to the plaintiff] and that [he] decided to disregard that risk." *Id.* at *9 (citation and internal quotation marks omitted).

      1.  <u>Defendants Semple and Erfe</u>

      The plaintiff contends that former Commissioner Semple failed to implement a policy

whereby there was adequate staffing and coverage in the medical unit for medical emergencies and failed to provide adequate medical personnel to avoid unnecessary delays in testing and treatment, and that former Warden Erfe failed to ensure adequate staffing in the Cheshire medical unit to respond to emergencies.  As explained above, creation or continuation of an unconstitutional policy can support a claim for supervisory liability if the plaintiff also alleges facts showing the defendant was aware of the risk posed by the policy.  *See, e.g., Abernathy v. Commissioner of Corr.*, No. 3:20-cv-628(VAB), 2021 WL 1240018, at *6 (D. Conn. Apr. 2, 2021) (suggesting that creation of unconstitutional policy could support a claim for supervisory liability but dismissing claims against commissioner and warden on initial review because complaint failed to allege facts "suggesting ... that either the Warden or the Commissioner had subjective knowledge that this [policy] posed a substantial risk of serious harm to an inmate and disregarded it").

The plaintiff alleges that former Commissioner Semple "openly admitted in previous litigation that he ... [was] aware of the ineffectiveness of the entire health care system...."  ECF No. 1 ¶ 49.  Although the plaintiff will be required to present evidence that former Commissioner Semple understood that the ineffectiveness in the health care system would adversely affect him to survive summary judgment, at this stage of litigation, the plaintiff's allegation is sufficient to state a plausible claim for supervisory liability against former Commissioner Semple.  *See Stone #1*, 2021 WL 4463033, at *10 (noting difference between actual subjective knowledge and mere notice is "not especially significant at the pleading stage" but is important at summary judgment) (citing cases).  The claim against defendant Semple will proceed against him in his individual capacity for further development of the record.

9

The plaintiff includes no similar allegations regarding the knowledge or awareness of former Warden Erfe.  Thus, this supervisory liability claim is dismissed as to former Warden Erfe.

### 2.  Dr. Ruiz

The plaintiff contends that Dr. Ruiz failed to ensure adequate staffing and a "proper" sick call system in the Cheshire medical unit and failed to properly supervise medical staff.  The plaintiff describes Dr. Ruiz as the supervising physician at Cheshire.  ECF No. 1 ¶ 23.  He alleges no facts suggesting that Dr. Ruiz had the authority to increase staff or change the sick call system.  These allegations are mere conjecture and do not support plausible claims against Dr. Ruiz.

The plaintiff also alleges that Dr. Ruiz failed to supervise the medical staff.  As explained above, the failure to supervise is insufficient to support a claim for supervisory liability against Dr. Ruiz.  The plaintiff must allege facts showing that Dr. Ruiz was aware of a risk of serious harm to the plaintiff and disregarded that harm.  The Second Circuit has clearly abrogated the *Colon* factor permitting supervisory liability based on improper supervision of subordinates.  *See Tangreti*, 983 F.3d at 619 (plaintiff must establish that each defendant's own conduct violated the constitution and liability can no longer be premised solely on the defendant's "supervision of others who committed the violation").  Accordingly, the claims against Dr. Ruiz are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### B.  Lack of Shower Mats

The plaintiff argues that Warden Erfe and Unit Manager Danby failed to correct long-standing unsafe conditions of which both defendants were aware, namely, the lack of mats

outside the showers.  To establish awareness, the plaintiff alleges that inmate James Davenport slipped and fell in the showers in 2016 and that then-Warden Erfe was informed of the incident. ECF No. 1 ¶¶ 71-72.  He also alleges that inmate Robert Swain fell in the showers several weeks before the plaintiff's incident, and alerted Unit Manager Danby about the lack of mats outside the showers.  *Id.* ¶¶ 74-75.  The plaintiff attaches declarations from both inmates.

An inmate must meet two requirements in order to state an Eighth Amendment claim against a prison official based on the inmate's conditions of confinement.  *McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020).  First, the inmate must allege that "objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities.'"  *Id.*  Second, the inmate must allege that, "subjectively, the defendant official acted with 'a sufficiently culpable state of mind ..., such as deliberate indifference to inmate health or safety.'"  *Id.* (alteration in original).  "Conditions of confinement inflict cruel and unusual punishment when they result 'in unquestioned and serious deprivations of basic human needs' or 'deprive inmates of the minimal civilized measure of life's necessities.'"  *Id.*

Courts considering similar claims have held that the failure to provide mats in the shower area does not rise to the level of an Eighth Amendment violation.  *See Adams v. Perez*, No. 08 Civ. 4834(BSJ)(ILG), 2009 WL 513036, at *3 (S.D.N.Y. Feb. 27, 2009) (stating that courts have repeatedly held that the failure to provide shower mats does not rise to the level of a constitutional violation); *Graham v. Poole*, 476 F. Supp. 2d 257, 260 (W.D.N.Y. 2007) (prison officials' failure to install mats in and around showers resulting in inmate falling and injuring neck and head constitutes negligence only).  As claims for negligence are not cognizable under section 1983, this claim against defendants Erfe and Danby is dismissed pursuant to 28 U.S.C. §

11

1915A(b)(1).  *See Eason v. Walsh*, No. 3:20CV00271(SALM), 2022 WL 326990, at *4 (D. Conn. Feb. 3, 2022) (negligence not cognizable under section 1983).

      C.  Deliberate Indifference to Serious Medical Needs

      The plaintiff contends that defendants Harris and Donohue-Gonzalez were deliberately indifferent to his serious medical needs by failing to ensure that he promptly received the required medical treatment.

      A prisoner may state a claim for an Eighth Amendment violation based on deliberate indifference to a serious medical need if he can allege facts showing that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'"  *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)).  To satisfy the objective element, the medical need must be "sufficiently serious," *i.e.*, a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).  The court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  *Salahuddin*, 467 F.3d at 280.

      Where the claim is for a delay in treatment, the court focuses on the effect of the delay, not the underlying injuries, when determining if there is a serious medical need under the objective component of the deliberate indifference test.  *See Smith v. Carpenter*, 316, F.3d 178, 185-86 (2d Cir. 2003).  A "delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Thomas v. Nassau Cty. Corr. Ctr.*, 288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003) (quoting *Chance v.*

*Armstrong*, 143 F.3d 698. 703 (2d Cir. 1998)).

The plaintiff suffered a concussion and subdural hematoma.  The delay in providing effective treatment and arranging a CT scan resulted in the plaintiff's needing emergency surgery.  The plaintiff has alleged facts showing that he had a serious medical need.

The plaintiff alleges that he and Officer Steiner related his symptoms to Nurse Harris and he and Dr. Cartwright related his symptoms to APRN Donohue-Gonzalez.  Nurse Harris referred the plaintiff to the mental heath unit instead of to a doctor and does not appear to have consulted a physician despite her acknowledgement that the plaintiff had suffered a concussion.  APRN Donohue-Gonzalez recognized that the plaintiff had suffered a concussion and acknowledged that the plaintiff needed a CT scan but merely said she would request one.  It does not appear that she did so or that she consulted a physician.  While both defendants recognized that the plaintiff has suffered a concussion, the allegations suggest that they disregarded the seriousness of the condition.  Accordingly, the claims against defendants Harris and Donohue-Gonzalez for deliberate indifference to a serious medical need will proceed against them in their individual capacities.

D.  Declaratory Relief

The plaintiff seeks declaratory relief in the form of statements that each defendant violated his constitutional rights by the actions described above.  Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationship."  *Colabella v. American Inst. of Certified Pub. Accountants*, No. 10-cv-2291(KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citation omitted).  As such, "[d]eclaratory relief operates

13

prospectively to enable parties to adjudicate claims before either side suffers great damages." *Orr v. Waterbury Police Dep't*, No. 3:17-cv-788(VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018). In *Orr*, the court dismissed the request for declaratory judgment that the defendants had violated the plaintiff's Fourth Amendment rights during his arrest because the request "concern[ed] past actions." *Id.* Here, the plaintiff seeks declaratory relief based on actions of the defendants nearly three years ago. As the request applies to past actions, the plaintiff's request for declaratory relief is not cognizable and is dismissed.

III.   Conclusion

All claims against defendants Erfe, Danby, and Ruiz are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The request for declaratory relief, the only claim asserted against the defendants in their official capacities, is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the claims against defendants Semple, Harris, and Donohue-Gonzalez in their individual capacities only.

The Court enters the following additional orders.

(1)   **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for defendants Semple, Harris, and Donohue-Gonzalez, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at that address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the cost of such service.

14

(2)      **The Clerk shall** send the plaintiff a copy of this Order.

(3)      **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)      The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(5)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(6)      All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7)      Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)      If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  The plaintiff should also notify the defendants or the attorney

15

for the defendants of his new address.

(9)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)     The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this 14th day of April 2022 at Hartford, Connecticut.

                              _____/s/_____
                              Michael P. Shea
                              United States District Judge

16