# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| |
|---|
| ANTHONY AZUKAS |
| *Plaintiff*, |
| v. |
| SCOTT SEMPLE, KRISTEN DONOHUE-GONZALEZ, AND SHADANE M. HARRIS |
| *Defendants*. |

No. 3:22-cv-00403-MPS

## RULING ON MOTION TO DISMISS

The plaintiff**,** Anthony Azukas, a sentenced inmate housed at Cheshire Correctional Institution in Cheshire, Connecticut, filed this *pro se civil* rights complaint under 42 U.S.C. § 1983. On initial review, the Court permitted Azukas to proceed on his Eighth Amendment deliberate indifference claims against Defendants Scott Semple, RN Shadane M. Harris, and APRN Kristen Donohue-Gonzalez, based on Semple's failure to implement policies ensuring constitutionally adequate healthcare coverage in Connecticut prisons and Harris's and Donohue-Gonzalez's failure to have Azukas transferred to a hospital to receive further testing and proper medical treatment. Defendant Donohue-Gonzalez has filed a motion to dismiss, which argues that the complaint is deficient because it fails to set forth a cognizable § 1983 claim for deliberate indifference. In the alternative, Donohue-Gonzalez argues that she is entitled to Eleventh Amendment immunity and qualified immunity on Azukas's Eighth Amendment claims. For the following reasons, the motion to dismiss is denied.

I.      **FACTS**

The complaint alleges the facts set forth below, and I consider them to be true for purposes of ruling on this motion to dismiss.[1]

On March 19, 2019, Azukas slipped on the tile floor and hit his head outside the downstairs showers in South Block 5 of Cheshire Correctional Institution. ECF No. 1 ¶¶ 5, 6. A few hours later, as Azukas tried to get up to go to the dining hall, his legs were numb. *Id.* ¶ 10. He "tried to reach out with his right arm," but his arm "would not work." *Id.* Azukas also experienced a headache and difficulty breathing, feeling as if he were being choked. *Id.*

Later that day, Azukas described his fall and his delayed symptoms to Nurse Harris, and completed a "sick call" request, which noted that he "may have damaged something vital" and asked to see the doctor. *Id.* ¶¶ 14-16. The next day he had a "massive headache" but when he tried to speak to a nurse he was told to write another sick call request. *Id.* ¶ 24. From March 21, 2019 through April 2, 2019, Azukas's physical and mental capacities deteriorated. *Id.* ¶ 27. At the end of the time, other inmates had to "practically . . . carry him, so that he could move around the [housing unit]." *Id.* He was "sleeping all day and night, vomiting and could not remember the day or month he was in." *Id.* ¶ 33. During this period, Azukas tried, unsuccessfully, to get medical assistance from nurses distributing medication. *Id.* ¶ 28.

On April 2, 2019, Custody Officer Steiner called the medical unit and reported that Azukas was not eating, was sleeping excessively, and was vomiting periodically. *Id.* ¶ 31. As a result of "a C.O.'s persistence," Azukas was seen in the medical unit that evening. *Id.* ¶ 32. Nurse

---

[1] In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I consider not only "facts alleged in the complaint" but also "documents attached to the complaint as exhibits." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). I also consider documents "incorporated by reference in the complaint," and documents not incorporated by reference "where the complaint relies heavily upon [their] terms and effect, thereby rendering the document[s] integral to the complaint." *DiFolco*, 622 F.3d at 111 (citations and internal quotation marks omitted). The plaintiff has attached to his complaint grievances, medical records, and related documents.

Harris, the only person there, examined him. *Id.* ¶ 32. Harris noted that the plaintiff had constant

neck pain/headache, was losing track of time, and had an odd demeanor and a flat affect. *Id.* ¶

34. Harris referred Azukas to mental health, gave him Motrin for his pain, and sent him back to

his cell. *Id.* ¶ 36.

The following day, April 3, 2019, Azukas went to the Mental Health Department, where

Social Worker Lisa Simo-Kinzer evaluated him. *Id.* ¶ 38. She realized that his issues were

medical, not psychiatric. *Id.* Social Worker Simo-Kinzer spoke with Office Steiner and discussed

her conclusions with Dr. Cartwright, the head of the Mental Health Department. *Id.* ¶¶ 39-40. Dr.

Cartwright took Azukas to the medical unit to discuss his issues with a doctor or APRN. *Id.* ¶ 40.

APRN Donohue-Gonzalez stated that she was the only person on duty in the medical unit

that day. *Id.* ¶ 41. After Dr. Cartwright and Azukas informed Donohue-Gonzalez of the "entire

situation, from start to finish," Donohue-Gonzalez performed a full physical and neurological

examination. *Id.* ¶¶ 42-43. Her primary diagnosis was concussion with a bad headache, and her

secondary diagnosis was "loss of time." *Id.* ¶ 43. Donohue-Gonzalez stated that Azukas needed a

CT scan and said she would "try and request one." *Id.* Azukas was again sent to his cell with

Motrin. *Id.* ¶ 44

On April 4, 2019, at 2:30 p.m., about a half hour before the shift change when the doctor

would leave, Dr. Cartwright came to Azukas's housing unit and asked whether he had been seen

by medical staff. *Id.* ¶ 52. When he said no, she became "visibly aggravated" and took him to the

medical unit. *Id.* Dr. Cartwright relayed all the information to Dr. Ruiz and left Azukas in Dr.

Ruiz's care. *Id.* ¶ 53. Dr. Ruiz performed another neurological test. *Id.* ¶ 54. As with the previous

test, Azukas failed half the tasks. *Id.* Dr. Ruiz sent him on an emergency trip to the UConn

Emergency Department for a CT scan. *Id.*

Azukas received a CT scan on April 4, 2019 at 7:00 p.m. *Id.* ¶ 55. About thirty minutes later an emergency code was called for him. *Id.* ¶ 56. He learned that the CT scan showed an "acute/subacute large left subdural hematoma (brain bleed) with a left uncal herniation and slight displacement of the brain stem." *Id.* ¶ 57. He was admitted to the ICU for neurological monitoring and emergency surgery the following morning. *Id.* ¶ 58. The surgeon explained that, although the surgery usually required cutting a hole the size of a dime in the skull, they would have to cut a hole the size of the Azukas's fist because so much blood had pooled in his brain. *Id.* ¶ 59. On April 5, 2019, Azukas underwent a craniotomy. *Id.* ¶ 60.

On August 1, 2019, Azukas returned to the general population. *Id.* ¶ 62. Because his head is held together with titanium plates and screws, the plaintiff must be careful and protective of his head. *Id.* ¶ 91. The large incision caused nerve damage to the left side of the plaintiff's head, face, and neck. *Id.* ¶ 92. He has chronic neck and left shoulder pain, and permanent weakness on the left side of his body. *Id.* ¶ 93. Azukas now walks with a cane. *Id.* He has permanent hypersensitivity to light in both eyes and hypersensitivity to certain sounds in his left ear. *Id.* ¶ 94. He wears special tinted glasses and keeps his left ear plugged. *Id.* The plaintiff cannot read, write, or concentrate as he once did. *Id.* ¶ 63. He was referred to the psychiatrist for testing and was found to have significant impairment in delayed memory and attention. *Id.* ¶¶ 99–100.

Azukas filed this lawsuit *pro se* on March 18, 2022, alleging, in part, that APRN Donohue-Gonzalez violated his Eighth Amendment rights by failing to have Azukas transported to a hospital and delaying his access to proper diagnostic testing and treatment. *Id.* ¶ 109. I later appointed pro bono counsel for Azukas, but Azukas himself drafted the operative complaint. ECF No. 18. APRN Donohue-Gonzalez has moved to dismiss the claims against her, arguing that (1) Azukas's complaint does not comply with the requirements of Rule 8(a), (2) Azukas's

complaint does not state a claim upon which relief can be granted, under Rule 12(b)(6), and (3) Azukas's claims against her are barred by the Eleventh Amendment and qualified immunity. ECF No. 36. Azukas filed a response to the motion to dismiss. ECF No. 51.

## II. STANDARD OF REVIEW

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Rule 8 is "extremely permissive," and its purpose is to give the defendant or defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) (citation and internal quotation marks omitted); *Ricciutti v. New York Trans. Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (observing that the purpose of Rule 8 is "to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery" (citation omitted)).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests,"[2] *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks and citations omitted). "[A] liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled." *Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) (internal quotation marks omitted).

## III.   DISCUSSION

### A.  Deliberate Indifference Claim

Defendant Donohue-Gonzalez argues that the plaintiff's allegations are insufficient to meet the pleading requirements of a § 1983 claim for Eighth Amendment deliberate indifference to serious medical needs. ECF No. 36 at 9.

<u>Eighth Amendment</u>

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks and citation omitted). To state a claim for deliberate indifference to a serious medical need, a plaintiff's claim must satisfy both objective and subjective elements. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). First, the alleged deprivation "must be, in objective terms, sufficiently serious." *Id.* (quotations and citations omitted). "Second, the charged official must act with a sufficiently culpable state of mind." *Id.*

---

[2] As noted, since he filed his Complaint, I appointed pro bono counsel for Azukas. Nevertheless, the requirement that courts "read the pleadings of a *pro se* plaintiff liberally . . . applies to any pleading drafted by a *pro se* litigant and continues even if the litigant later retains counsel." *Pierce v. New York State Police*, No. 7:05-CV-01477, 2011 WL 1315485, at *12 (N.D.N.Y. Apr. 4, 2011) (citation and internal quotations omitted). Because Azukas himself drafted the complaint, I apply the standard applicable to *pro se* litigants.

Under the objective prong, the inmate's medical need or condition must be "a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

 "When the basis for a prisoner's Eight Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185-186 (2d Cir. 2003) (citation and internal quotations omitted). The court should consider the "particular risk of harm faced by a prisoner due to the challenged deprivation of care." *Id.* "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* at 187. The Second Circuit has held that a delay in treatment rises to the level of deliberate indifference when, for example, a complaint alleged a three-day delay in treatment for a "life-threatening and fast-degenerating" condition. *Liscio v. Warren*, 901 F.2d 274, 277 (2d Cir. 1990), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009).

To satisfy the subjective prong, a prison official or medical staff member must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Mere negligent conduct does not constitute deliberate indifference. *See Salahuddin*, 467 F.3d. at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

### Allegations Against Donohue-Gonzalez

Donohue-Gonzalez argues that the allegations against her are insufficient to establish deliberate indifference to serious medical needs. ECF No. 36. Her primary argument is that the sixteen-day delay in treatment underlying Azukas's claim cannot be attributed to her because she became involved in his care only on day fifteen. *Id.* at 7. I disagree.

Azukas does not allege that Donohue-Gonzalez is responsible for the entire sixteen-day delay. The complaint specifically states that Donohue-Gonzalez "fail[ed] to have the plaintiff transported to the hospital, block[ing] his access to proper diagnostic testing and treatment at the **final forty-eight (48) hours of a sixteen (16) day delay** . . . ." ECF No. 1 ¶ 109 (emphasis added). It goes on to allege that she caused an unnecessary delay in treatment when "she failed to send the plaintiff out of the facility to receive proper diagnostic testing and medical treatment" and "failed to have the plaintiff transported to the hospital" on April 3. *Id.* ¶¶ 45, 109.

The plaintiff suffered from a subdural hematoma, a life-threatening and fast-degenerating condition. A subdural hematoma is "among the deadliest of all head injuries" and can lead to the loss of consciousness, paralysis, or death "[i]f not diagnosed and treated quickly." ECF No. 1-1 at 52, 178. The condition causes blood to fill the brain area "very rapidly," which compresses brain tissue and, without proper diagnosis and treatment, leads to brain injury. *Id.* at 178.

The reasonable inference I must draw from these facts is that after Donohue-Gonzalez sent Azukas back to his cell on April 3, blood continued to pool within his skull until he received proper treatment at the hospital. Once there, Azukas underwent emergency surgery, which usually requires an incision the size of a dime. But in Azukas's case, so much blood had pooled within his skull that doctors needed to make an incision the size of the plaintiff's fist. ECF No. 1 ¶ 59. Azukas alleges that he has severe nerve damage due to the size of the incision. *Id.* ¶ 92. He further alleges that numerous physical, cognitive, and mental health issues he suffers from are the result of permanent brain damage stemming from the delay in proper diagnosis and treatment.

The defendant argues that the plaintiff received a CT scan the day after she treated him, and "the Second Circuit has repeatedly held that a brief delay in treatment falls short of a Constitutional violation." ECF No. 36 at 14 (emphasis omitted) (quoting *Bland v. Franceschi*, No. 3:16-cv-01406 (KAD), 2019 WL 356828, at *5 (D. Conn. Jan. 29, 2019)). *Bland* is inapposite, however, as that case involved the accidental administration of incorrect medication and was otherwise far afield from the allegedly life-threatening situation described in the plaintiff's complaint. And the defendant's quotation of *Bland* omits a material portion of the court's actual language: "the Second Circuit has repeatedly held that **medical negligence and/or** a brief delay in treatment falls short of a Constitutional violation." *Bland v. Franceschi*, No. 3:16-cv-1406 (KAD), 2019 WL 356828, at *5 (D. Conn. Jan. 29, 2019) (emphasis added). The *Bland* court acknowledged in a parenthetical that "a delay in providing necessary medical care may rise to the level of a constitutional violation, but the Second Circuit has reserved such a classification for cases involving deliberate delay of treatment as a form of punishment, disregard for a life-threatening and fast degenerating condition, and extended delay of a major

surgery." *Id.* (citing *Demata v. N.Y. State Corr. Dept. of Health Servs.*, No. 99-0066, 198 F.3d 233 (Table), 1999 WL 753142, at *2 (2d Cir. Sept. 17, 1999)).

And courts have held that "[a] few hours' delay in receiving medical care for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference." *Lasher v. City of Schenectady*, No. 02-CV-01395, 2004 WL 1732006, at *5 (N.D.N.Y. Aug. 3, 2004); *see, e.g.*, *Thomas v. Tisch*, No. 08-CV-00400, 2009 WL 701009, at *7 (E.D.N.Y. Mar. 11, 2009) (denying motion to dismiss deliberate indifference claim where plaintiff claimed "he was held in a holding pen for twenty (20) hours without needed medication or care" for his diabetes and epilepsy); *Simmons v. Pedroza*, No. 10-CV-00821 PGG, 2011 WL 814551, at *3 (S.D.N.Y. Mar. 7, 2011) (denying motion to dismiss deliberate indifference claim where plaintiff alleged doctor "left him lying on the floor for hours without pain medication when he was suffering from intense pain"); *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) ("[A]n unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference."). In a similar case involving an even briefer delay in treating a subdural hematoma than the one allegedly caused by Donohue-Gonzalez, the court denied the defendant's motion for summary judgment. S*calia v. Cty. Of Kern*, 493 F. Supp. 3d 890, 894-95 (E.D. Cal. 2019) (approximately four hours between defendant nurse's sending plaintiff back to cell and defendant nurse's sending plaintiff to hospital, and a CT scan later showed that the plaintiff suffered from a subdural hematoma).

Plaintiff has plausibly alleged that Donohue-Gonzalez disregarded his life-threatening and fast degenerating condition, which delayed his receipt of necessary testing and treatment. Further, it is a reasonable inference from the plaintiff's allegations that the delay attributable to Donohue-Gonzalez exacerbated the permanent damage he suffered from the subdural hematoma.

*Cf. Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012) (finding summary judgment was warranted on deliberate indifference claim where the plaintiff produced "no evidence [his] conditions worsened over the hours of delay," or he "suffered any . . . consequential injurious effects").

As to the subjective prong of a deliberate indifference claim, Donohue-Gonzalez argues that the plaintiff fails to allege that she acted with a sufficiently culpable mental state. ECF No. 36 at 14. I disagree.

Azukas alleges that he and Dr. Cartwright provided Donohue-Gonzalez with a full history of the injury and his condition, "from start to finish." ECF No. 1 ¶ 42. From these allegations, I infer that Donohue-Gonzalez was aware that Azukas had suffered a head injury, that the injury had gone untreated for fourteen days, and that he presented symptoms consistent with a subdural hematoma, including several symptoms that indicated a possible emergency and required immediate medical treatment.[3]

Although Donohue-Gonzalez recognized that the plaintiff had suffered a concussion and acknowledged that the plaintiff needed a CT scan, she merely said she would request one. ECF No. 1 ¶ 43 ("Donohue-Gonzalez did state that the plaintiff needed a CT scan and said she would try to request one."); No. 1-1 at 14 ("A CT scan will be requested."). From the facts alleged in the complaint and the attached exhibits, I cannot infer that she ordered a CT scan, consulted a physician, sent plaintiff to the hospital, or took any other steps to ensure Azukas received the medical care he needed even though she knew he was suffering from a serious head injury.

---

[3] Azukas's symptoms included trouble walking, weakness in his arms, difficulty staying awake, and vomiting. Several of his symptoms has worsened considerably over time. Each of these symptoms indicated a possible emergency and requires immediate treatment at a hospital. *See* ECF No. 1-1 at 51. Azukas's medical records confirm that Donohue-Gonzalez knew about at least some of these symptoms. *Id.* at 13 (observing that Azukas "has been asleep for . . . most of the week in his cell," "is reporting a loss of days and is confused about today['s] date," "when [Azukas] is asked to close the eyes and [stand] upright there is a teetering to the right. . . . After performing the standing exercises[] [Azukas] is reporting a 'fuzzy' sensation in his head").

Despite signs that the plaintiff had suffered severe head trauma and was experiencing potentially life-threatening symptoms, Donohue-Gonzalez sent the plaintiff back to his cell. She asserts that her involvement was the "primary reason" Azukas was sent to the hospital the following day, ECF No. 36 at 7, but the plaintiff's allegations do not support this claim. Azukas was seen by medical staff the following day only after Dr. Cartwright came to his housing unit a shortly before the doctor was scheduled to leave.[4] Dr. Cartwright escorted Azukas to the medical center, where Dr. Ruiz performed a neurological test. Azukas failed that test, just as he had the day before, and Dr. Ruiz sent him to the hospital. These allegations support the inference that the plaintiff's need for immediate medical treatment was obvious to other medical officials at the prison and that it was the involvement of Dr. Cartwright and Dr. Ruiz – not Donohue-Gonzalez's – that led to the plaintiff's receiving that treatment on April 5.

Based on the plaintiff's allegations and the reasonable inferences they support, I find that Azukas alleges a plausible Eighth Amendment deliberate indifference claim against Donohue-Gonzalez.[5]

## B. Immunity

<u>Eleventh Amendment Immunity</u>

Donohue-Gonzalez claims that she is entitled to "Eleventh Amendment sovereign . . . immunity as a matter of law," and she is therefore "protected from [Azukas'] instant claims for

---

[4] The complaint alleges that Azukas was sent to the hospital only because Dr. Cartwright visited his cell at 2:30 pm on April 4, 2019, about thirty minutes before the doctor was scheduled to leave for the day, to see if medical staff had attended to Azukas. ECF No. 1 ¶ 52. Azukas claims that Dr. Cartwright was "visibly aggravated," and told him, "Let's go! . . . They're seeing you RIGHT now before they leave!" *Id.*

[5] I also note that Azukas's complaint adheres to the requirements of Rule 8(a). The standard that Rule 8 sets is "lenient," and "dismissal pursuant to the rule is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Wynder*, 360 F.3d at 80 (internal quotation marks omitted). Moreover, a "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Even if Azukas's complaint was drafted by lawyers, however, it would easily meet Rule 8's permissive standard.

money damages raised against her." ECF No. 36 at 23. "The Eleventh Amendment precludes suits against states unless the state expressly waives its immunity or Congress abrogates that immunity." *See Li v. Lorenzo*, 712 F. App'x 21, 22 (2d Cir. 2017). The Eleventh Amendment bar "remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Defendant Donohue-Gonzalez is sued only in her individual capacity and thus cannot avail herself of Eleventh Amendment immunity. *See* ECF No. 8 at 13.

Qualified Immunity

Donohue-Gonzalez also claims that she is entitled to qualified immunity, because she did not "act[] intentionally and maliciously to deprive a recognized constitutional right." ECF No. 36 at 23. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken— decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.' " *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

"In determining whether state actors are entitled to qualified immunity under federal law, [the Court] consider[s] two factors: (1) whether the facts presented make out a violation of a constitutional right; and (2) whether the right at issue was clearly established when it was

allegedly violated." *Torcivia v. Suffolk Cnty., New York*, 17 F.4th 342, 367 (2d Cir. 2021). "Only

Supreme Court and Second Circuit precedent existing at the time of the alleged violation is

relevant in deciding whether a right is clearly established." *Id.* (internal quotation marks and

citation omitted). "In evaluating these two factors, [the Court] look[s] to the specific context of

the case at bar rather than broad general proposition[s]." *Id.* (internal quotation marks and

citations omitted). "A clearly established right is one that is sufficiently clear that every

reasonable official would have understood that what he is doing violates that right." *Mullenix v.*

*Luna*, 577 U.S. 7, 11 (2015) (internal quotations and citations omitted). There is no requirement

that precedent be directly on point, "but existing precedent must have placed the statutory or

constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Although qualified immunity may be successfully asserted on a motion to dismiss the

complaint, the defense "faces a formidable hurdle" at the pleading stage. *Horn v. Stephenson*, 11

F.4th 163, 169-70 (2d Cir. 2021). At this stage, the court draws all reasonable inferences in favor

of the plaintiff both from the facts alleged in the complaint that support the plaintiff's claim and

those that would defeat the qualified immunity defense. *Hyman v. Abrams*, 630 F. App'x 40, 42

(2d Cir. 2015).

The Court has concluded that Azukas alleged sufficient facts to state a plausible claim for

deliberate indifference to serious medical needs against Donohue-Gonzalez. It is plain that a

prison medical official who either intentionally or recklessly disregards the seriousness of a

potentially life-threatening head injury suffered by a symptomatic inmate – in the way that

Donohue-Gonzalez allegedly did – violates the Eighth Amendment, and no reasonable prison

medical official would believe otherwise. At this stage, I conclude that Azukas has alleged

sufficient facts, when taken as true and when all reasonable inferences are drawn in his favor, to

withstand a defense of qualified immunity as to his deliberate indifference claim and, therefore, I deny the motion to dismiss.

**IV.     CONCLUSION**

For the reasons above, I deny the motion to dismiss (ECF No. 36) the claim against Defendant Donohue-Gonzalez.

IT IS SO ORDERED.

_____

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut

February 20, 2024